Case No. 11-15983-CC

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

SYLVESTER B. LANE and MARY LANE,
Plaintiffs-Appellants,

v.

FORT WALTON BEACH HOUSING AUTHORITY,
GAIL SANSBURY, in her Official Capacity
as Executive Director of the Fort Walton
Beach Housing Authority, and GAIL SANSBURY,
in her Individual Capacity,

Defendants-Appellees.

**On Appeal From The United States District Court
For The Northern District Of Florida**

**REPLY BRIEF OF APPELLANTS**

Edward J. Grunewald, Fla. Bar No. 612472
Jill B. Zaborske, Fla. Bar No. 621005
Jamie Ito, Fla. Bar No. 13553
The North Florida Center For Equal Justice, Inc.
2121 Delta Boulevard
Tallahassee, FL 32303
Phone: (850) 701-3980
Fax: (850) 701-3985
Attorneys for Appellants

# TABLE OF CONTENTS

**PAGE**

Table of Citations ..................................................................................... ii

Introduction ...............................................................................................1

Argument & Citations of Authority ..........................................................2

Certificate of Service .............................................................................15

# TABLE OF CITATIONS

**CASES**                                                                 **PAGE**

\* *Basco v. Machin*,
514 F.3d 1177 (11th Cir. 2008) ...................................................1, 5, 6, 8, 9, 10, 11

*Clark v. Alexander*,
85 F.3d 146 (4th Cir. 1996) ....................................................................................4, 5

*Davila v. Delta Air Lines, Inc.*,
326 F.3d 1183 (11th Cir. 2003) .................................................................................2

*Ervin v. Housing Authority of Birmingham District*,
281 Fed. Appx. 938 (11th Cir. 2008)..........................................................................5

*Goldberg v. Kelly*,
397 U.S. 254, 90 S. Ct. 1011 (1970)...........................................................................5

*KH Outdoor, LLC v. Clay County, Florida*,
482 F.3d 1299 (11th Cir. 2007) ........................................................................13, 14

*McGahee v. Massey*,
667 F.2d 1357 (11th Cir. 1982) ................................................................................4

*Sanders v. Sellers-Ernest*,
768 F. Supp. 2d 1180 (M.D. Fla. 2010)....................................................................6

*Sweeney v. Housing Authority of Chester County*,
215 B.R. 97 (Bankr. E.D. Penn. 1997) ....................................................................4

*Robinson v. District of Columbia Housing Authority*,
660 F. Supp. 2d 6 (D.C. Cir. 2009).................................................................4, 5, 10

*Ronet v. Foster*,
2006 WL 1980273 (M.D. Fla. July 12, 2006) ....................................................9, 10

*Yniguez v. Arizona*,
975 F.2d 646 (9th Cir. 1992) ...........................................................................13, 14

**FEDERAL RULES OF EVIDENCE**

Rule 201(b) ........................................................................................... 10

**FEDERAL RULES OF CIVIL PROCEDURE**

Rule 12(b)(6)....................................................................................7, 12

**FLORIDA STATUTES**

§ 775.21, Fla. Stat. ........................................................................11, 12

*Authorities upon which we chiefly rely are marked with asterisks (*).*

## INTRODUCTION

Appellees, Fort Walton Beach Housing Authority and Gail Sansbury (collectively, "FWBHA"), in their Answer Brief fail to demonstrate how the lower court applied the proper standard of review on their motion to dismiss. FWHBA does not dispute that the well-settled law governing motions to dismiss mandates that factual allegations must be accepted as true and all reasonable interferences from them be drawn in favor of the plaintiff and against the moving party. FWBHA does not dispute the well-pleaded factual allegations set forth by Appellants, Mary and Sylvester Lane (collectively, "the Lanes"), in their First Amended Complaint ("complaint") and set forth in the Lanes' Initial Brief. FWBHA does not dispute that it failed to submit any evidence to the hearing officer at the Lanes' informal hearing on the termination of their Section 8 assistance based on personal, direct knowledge of Mackil Taylor's residence.

FWBHA does not squarely address how the sexual offender registry or the police call history record constitutes reliable evidence that satisfies the reliability test set forth in *Basco v. Machin*, 514 F.3d 1177 (11th Cir. 2008). Incapable of showing how either satisfies that test, FWBHA turns to easily distinguishable cases from other jurisdictions. FWBHA fails to point to a single case showing that an Internet printout of a sexual offender registry, either by itself or in combination with a police call history record, is reliable evidence under *Basco*.

1

Finally, FWBHA's argument that the district court did not err in dismissing as moot the Section 1983 action the Lanes brought based on FWBHA's failure to provide the Lanes with thirty (30) days notice of the termination of their Section 8 assistance is fundamentally flawed.  FWBHA does not dispute that the Lanes did not receive the requisite notice when FWBHA terminated the Lanes' Section 8 assistance, nor does FWBHA dispute that the Lanes alleged they were damaged as a result of FWBHA's noncompliance.  FWBHA failure to give the requisite notice could not be cured and the Lanes' claim is not moot.

## ARGUMENT & CITATIONS OF AUTHORITY

**I.    The District Court did not properly apply the standard of review.**

**A.    The Lanes set forth and apply the proper standard of review.**

FWBHA incorrectly asserts that the Lanes set forth in their Initial Brief the wrong standard for deciding a motion to dismiss.  (Answer Brief of Defendants-Appellees 6 ("Br.")).  FWBHA first argues that the Lanes' standard is wrong because it is incomplete and because "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal," quoting *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003)." (Br. 6).  FWBHA contends that allegations in the Lanes' complaint that "Mr. Taylor had not lived with them since 1992 and questioning the evidence suggesting otherwise" fall within this description, citing pages 16 through 18 of the Lanes'

Initial Brief.  (Br. 9).  FWBHA's paraphrasing greatly distorts and understates the Lanes' factual allegations.  (Initial Brief of Appellants 16-18 ("Initial Br."); Doc 51 – Pg 6-8; Doc 51-1 – Pg 4).  Had the district court accepted the factual allegations as true – as required by Rule 12(b)(6) – then it is far more than "plausible" that the Lanes alleged sufficient facts for a Section 1983 claim.  Instead, the district court drew contrary inferences – some of which were based on facts controverted in the Lanes' complaint and were not supported by any reliable evidence.

FWBHA next argues that the standard set forth by the Lanes is wrong because the Lanes allegedly *imply* in their argument that the district court was required to limit itself to the specific allegations in the complaint itself and *implicitly* assume that district courts must review the hearing officer's decision de novo and without deference.  (Br. 6-7).  The Lanes set forth the proper standard (Initial Br. 11) and do not, expressly or implicitly, argue that the court was limited only to the specific allegations in the complaint itself.  Indeed, the Lanes even refer to and discuss the sexual offender registries FWBHA submitted to the hearing officer and the hearing officer's written decision, as well as the call logs and faxes submitted to the hearing officer by the Lanes, even though none of those documents is attached to their complaint.

Contrary to FWBHA's assertion otherwise, the Lanes do not implicitly assume the standard that should apply.  FWBHA does not dispute that this court

3

reviews a motion to dismiss de novo, the standard set forth by the Lanes (Initial Br. 11).    Instead, FWBHA, for the first time on appeal, argues that a deferential standard of review applies in Section 8 termination cases, contending "[i]t is well established that the findings and conclusions of a Section 8 hearing officer are entitled to substantial deference," citing *Clark v. Alexander*, 85 F.3d 146 (4th Cir. 1996), and *Robinson v. District of Columbia Housing Authority*, 660 F. Supp. 2d 6 (D.C. Cir. 2009).    (Br. 7).    It is not clear from the district court's order what standard (de novo or deferential) the court applied, and having failed to raise this issue before the district court FWBHA cannot now raise this issue for the first time.    *See McGahee v. Massey*, 667 F.2d 1357, 1361 n.10 (11th Cir. 1982) (declining to consider issue raised by the appellee for the first time in his answer brief).    Furthermore, FWBHA, notably, does not cite an Eleventh Circuit case in support of this purportedly "well established" standard; at least one federal court has applied a de novo standard of review, *see Sweeney v. Housing Authority of Chester County*, 215 B.R. 97, 98 (Bankr. E.D. Penn. 1997) (conducting a *de novo* hearing on the termination of the debtor's Section 8 assistance); and *Clark* and *Robinson* are obviously distinguishable.

The only similarity between *Clark*, a Fourth Circuit case, and *Robinson*, an unpublished District of Columbia case, and the case at bar is that they also involve Section 1983 actions based on the termination of a Section 8 recipient's assistance

4

for allegedly allowing an unauthorized individual to reside in their unit. The factual similarities stop there. In *Clark* and *Robinson* an unauthorized individual was arrested pursuant to a warrant being issued for his arrest at the respective Section 8 recipient's residence. In determining what standard to apply in *Clark*, the court first assessed whether the informal hearing complied with the "*Goldberg*[*v. Kelly*, 397 U.S. 254, 90 S. Ct. 1011 (1970),] requirements including the opportunity to confront witnesses, the opportunity to be represented by counsel, and a hearing in front of an impartial decision maker." *Clark*, 85 F. 3d at 151. With respect to the first factor – opportunity to confront witnesses – a police officer who was present during the execution of a search warrant testified at the termination hearing in *Clark* that based on the individual's conduct he believed the individual lived there. *Id.* at 149. There was no such similar testimony at the Lanes' termination hearing, and one basis for the Lane's § 1983 claims is the lack of an opportunity to cross-examine the witnesses who supplied the hearsay evidence at the Lanes' informal hearing. (Doc 51 – Pg 13, 15).

Assuming, *arguendo*, that a deferential standard applies, before a court even accords deference to the hearing officer's written decision the court must assess whether the underlying evidence satisfies *Basco v. Machin*, 514 F.3d 1177 (11th Cir. 2008). *See*, *e.g.*, *Ervin v. Housing Auth. of Birmingham Dist.*, 2008 WL 2421799, at *3 (11th Cir. Jun. 17, 2008) (per curiam) (unpublished opinion)

(remanding in light of *Basco* to district court to consider underlying reliability and probative value of the evidence upon which the hearing officer based its decision to terminate Section 8 assistance).  *See also Sanders v. Sellers-Earnest*, 768 F. Supp. 2d 1180 (M.D. Fla. 2010) (applying *Basco* and holding housing authority's determination to terminate Section 8 benefits violated due process because it was based on unreliable hearsay).  In the case at bar, it makes no difference which standard (de novo or deferential) applies because the Lanes are entitled to prevail under either standard – as FWBHA did not present any legally sufficient evidence under *Basco* to the hearing officer showing that Mackil Taylor lived with the Lanes for more than fourteen (14) consecutive days or thirty-one (31) days during a calendar year as required under FWBHA's Administrative Plan (Doc 65-2 – Pg 52-53).

**B.    The Lanes adequately alleged claims under § 1983 and the district erred in dismissing their claims.**

FWBHA asserts the district court did not err in dismissing the Lanes' complaint because the hearing officer acted within his discretion and the evidence upon which he relied in making his determination was legally sufficient.  (Br. 8-13).  FWBHA block quotes the district court's order in an attempt to illustrate that the hearing officer acted within his discretion.  (Br. 9).  The block quote, however, demonstrates how the district court did not assess the underlying reliability and probative value of the evidence FWBHA presented to the hearing officer at the

6

informal hearing and highlights how the district court applied the wrong standard of review.

The block quote contains a discussion by the district court regarding a call history record (Doc 35B) the Lanes brought to their informal hearing before the hearing officer.  Not only did the Lanes submit the call history record after FWBHA was supposed to have satisfied its initial burden, but the hearing officer in his written decision never mentions the call history record or even alludes to its contents.  It is possible the hearing officer found the document to be unreliable and did not take it into account in making his determination because (1) it is riddled with double hearsay, (2) is not clear what it says or whose statement are in it, and (3) no where in it does it state that Mackil Taylor lived with the Lanes, let alone for any specified time period.  The district court gave contrary inferences, some of which were based on "facts" controverted in the Lanes' complaint, the most obvious of which is the Lanes' allegation that they submitted the call history record to show that Mackil Taylor did not live with them.  (Doc 51 – Pg 8).

Had the court below accepted the factual allegations in the Lanes' complaint as true – as required by Rule 12(b)(6) of the Federal Rules of Civil Procedure – then it is far more than "plausible" that the FWBHA's termination of the Lanes' Section 8 assistance based on ambiguous, unreliable hearsay violated the Lanes' due process rights in a manner that could constitute a violation of Section 1983.

7

Instead, the district court assumed the hearing officer relied on the call history logs and went even further to draw the worst possible inferences against the Lanes to conclude that Mackil Taylor resided with the Lanes in a manner that would violate the Lanes' obligations. The district court gave the call history record meaning without regard to the hearing officer's written decision or the applicable standard on a motion to dismiss, ignored the double-hearsay contained in the document, and offered no basis why the call history record itself is reliable under the test enumerated in *Basco*.

FWBHA states that the Lanes "do not appear to assert the use of hearsay (or the sufficiency of the evidence) as a separate ground for relief and never explain how this argument supports their misguided assertion that the district court applied the wrong standard in resolving the motion." (Br. 10). The Lanes dedicate six (6) pages of their Initial Brief to this issue, discussing and applying the standard set forth in *Basco*. (Initial Br. 9-25). The Lanes argued this issue at length in the district court. (*Id.* 6-15). The district court's failure to apply the proper standard is inextricably intertwined with its deficient analysis of the evidence upon which the hearing officer necessarily relied in making his determination.

FWBHA, like the district court, ignores that it had the initial burden at the informal hearing to prove by a preponderance of the evidence that Mackil Taylor resided with the Lanes for the requisite time period. It is not evident from the

8

hearing officer's written decision that he relied on any documents other than the sexual offender registry – the only documents submitted by FWBHA to the hearing officer – in making his determination. Even if the hearing officer relied on the sexual offender registry and the call history record, as FWBHA suggests even though such a reading is contrary to the allegations in the Lanes' complaint, especially when read in the proper light, proper application of the test set forth in *Basco* would have made it far more than "plausible" that the Lanes' stated a Section 1983 violation. Had the district court applied the proper standard, it would have been evident that the Lanes claims should have survived a motion to dismiss.

Instead of focusing on the application of the test set forth in *Basco*, which even the district court recognized as the applicable test but did not actually apply (Doc 68 – Pg 7), FWBHA, without giving any record citation, asserts that the "district court observed [that] the sexual offender registry relied upon here is the sort of reliable hearsay evidence that courts have *routinely* held may be used in upholding administrative rulings." (Br. 11) (emphasis added). The district court made no such finding. Nor did the district court reference *Ronet v. Foster*, 2006 WL 1980273 (M.D. Fla. July 12, 2006) (unpublished opinion), the case FWBHA

9

cites to support its proposition that courts *routinely* have held sexual offender registries are reliable hearsay. *Ronet* does not stand for that proposition.[1]

FWBHA also tries to shift the focus away from *Basco* by arguing that *Robinson v. District of Columbia Housing Authority*, 660 F. Supp. 2d 6 (D.D.C. 2009), "is almost directly on point and especially instructive." (Br. 12). *Robinson* did not involve the use of an Internet printout of a sexual offender registry as proof of a person's residence for a specified period of time. Also, in *Robinson* the person allegedly living with the Section 8 recipient was arrested at the Section 8 recipient's house pursuant to a warrant and had told the arresting officer he had been "living" there for about two (2) years. 660 F. Supp. 2d at 9 (internal quotation marks omitted). The case at bar is very different from *Robinson*. *Basco*, not *Robinson*, is the beacon in this case.

FWBHA tries to distinguish this case from *Basco*. FWBHA argues that the sexual offender registry is different from the police reports in *Basco* because the

---

[1] A pro se prisoner in *Ronet* sought an emergency preliminary injunction enjoining the State of Florida from requiring him to register as a sex offender and in relation to the motion the district court in a footnote takes judicial notice of the registry's classification of the prisoner as having absconded from registration. 2006 WL 1980273 at *1 n.3. Rule 201(b) of the Federal Rules of Evidence governs judicial notice and provides: "A judicially noticed fact must be one *not subject to reasonable dispute* in that it is … (1) generally known within the territorial jurisdiction of the trial court." (Emphasis added). Whether Mackil Taylor actually resided at the address on his sexual offender registry is subject to reasonable dispute and is not a fact generally known within the jurisdiction of this court.

10

registry identifies Mackil Taylor and because the registry lists the Lanes' address as Mackil Taylor's "permanent" address and, therefore, provides information about the length of Mackil Taylor's alleged stay.  (Br. 11).  FWBHA also argues that this case is distinguishable from *Basco* because "the hearing office [sic.] here relied on more information than just the sexual offender registry" – "he also relied up [sic.] the call log…."  (Br. 11).  Again, there is no indication in the hearing officer's written decision that suggests he relied on the call history record, the only evidence the housing authority presented at the informal hearing was copies of the sexual offender registry, and the name on the call history record, like in *Basco*, does not match the name on the registry.[2]  That the registry lists the Lanes' address as Mackil Taylor's "permanent" address only means that Mackil Taylor listed their address as his permanent address, not that he actually resided there.  There is no indication that courts view sexual offender registry printouts or the call history records, with their double hearsay, as inherently reliable.

Additionally, by definition a sexual offender could accurately register a permanent address on the sexual offender registry but still by definition be only a house guest under FWBHA's Administrative Plan (Doc 65-2).  *Compare* §

---

[2] In *Basco*, one police report referred to "Emanuel Jones" and another referred to "Elonzel Jones."  514 F.3d at 1183. In the case at bar, the call history record refers to "Mackilieaha Taylor" and the sexual offender registration is for "Mackil Taylor."  (Br. 11-12).

775.21(2)(k), Fla. Stat. ("'Permanent residence' means a place where the person abides, lodges, or resides for 5 or more consecutive days.") *with* FWBHA Administrative Plan, Admissions & Continued Occupancy Policy at C-28, 29 (Doc 65-2 – Pg 52-53) ("[H]ouse guests staying with the family for a period in excess of 14 consecutive days shall be permitted only upon advance written consent of the Housing Manager.  Families may not have house guests for more than 30 days during any calendar year without advance written consent of the Housing Manager.").  *See* § 943.0435(1)(c), Fla. Stat. (permanent residence for sexual offender registration has the same meaning ascribed in § 775.21, Fla. Stat.).

As detailed above, the Lanes specifically pleaded facts presenting at least a "plausible" claim under Section 1983.  Had the district court assumed the truth of the Lanes' well-pled facts and drawn all inferences in favor of the Lanes – as was required under Rule 12(b)(6) – it would have had no choice but conclude that the Lanes stated a claim for relief under Section 1983.  Instead, the district court largely ignored the Lanes' allegations and adopted an interpretation of the hearsay evidence in the light least favorable to the Lanes.  In so doing, the court erred.

## II.    The district court erred in dismissing the Lanes due process claim as moot.

FWBHA argues that the district court did not err in dismissing as moot the Section 1983 action the Lanes brought based on FWBHA's failure to provide the Lanes with thirty (30) days notice of the termination of their Section 8 assistance.

12

(Br. 13).  FWBHA does not contend it gave the Lanes the requisite notice.  Instead, FWBHA argues that the district court's summary conclusion that the Lanes' claim is moot because they "now have been given adequate notice" (Doc 68 – Pg 10) should stand because "the Lanes have *not* challenged the merits of the district court's ruling on this point in their brief" (Br. 14) and because two (2) cases, *KH Outdoor, LLC v. Clay County, Florida*, 482 F.3d 1299 (11th Cir. 2007), and *Yniguez v. Arizona*, 975 F.2d 646 (9th Cir. 1992) (per curiam), cited by the Lanes in their Initial Brief purportedly are distinguishable.  FWBHA misconstrues the Lanes' argument.

FWBHA never argued in the district court that the Lanes received "adequate notice."  Instead, FWBHA argued in its motion to dismiss that this claim was moot because "[t]he Lanes never had to move from their residence and their Section 8 assistance has been reinstated" and "[t]here is no relief that [the district] court could grant as no relief is needed." (Doc 59 – Pg 12).  In response to this argument the Lanes argued their claims were not moot under *KH Outdoor* and *Yniguez*.  Because this court's review of the district court's dismissal of the Lanes' claim is de novo, the Lanes reasserted their argument on appeal.

Even though the district court gave no explanation for its finding that the Lanes "have now been given adequate notice" (Doc 68 – Pg 10), and it is not clear what purportedly gave the Lanes "adequate notice," the Lanes in their Initial Brief

13

surmise that the court is referring to the hearing officer's written decision following remand. (Initial Br. 26). The Lanes argue in their Initial Brief that any such notice would not cure the defective notice they received in the first place and which caused them damage. (*Id.*). Accordingly, FWBHA is mistaken in contending the Lanes did not challenge the district court's "adequate notice" finding.

Contrary to FWBHA's assertions otherwise (Br. 14-15), *KH Outdoor* and *Yniguez* are not distinguishable on the ground that the district court in those cases never addressed the merits of a constitutional challenge. As alleged by the Lanes, FWBHA's failure to give thirty (30) days notice before terminating their assistance caused them damage. No matter what purported notice the Lanes subsequently received, it could not and did not cure the constitutionally inadequate notice that, as alleged in their complaint, caused them damage. The district court erred in holding the claim was moot.

## CONCLUSION

For the reasons stated above and in Appellant's Initial Brief, the decision of the district court granting FWBHA's Motion to Dismiss should be reversed and the case remanded to permit full factual development and resolution at trial, and the district court's denial of their motions to proceed *in forma pauperis* should be reversed.

Respectfully Submitted,
The North Florida Center For Equal Justice, Inc.

BY: _____

Edward J. Grunewald, Fla. Bar No. 612472
Jill B. Zaborske, Fla. Bar No. 621005
Jamie Ito, Fla. Bar No. 13553
2121 Delta Boulevard
Tallahassee, FL 32303
P: (850) 701-3980
F: (850) 701-3985

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was furnished by US Mail to counsel for Appellees, Charles F. Beall, Jr., of Moore, Hill & Westmoreland, P.A., Post Office Box 13290, Pensacola, FL 32591-3290, on April 19, 2012.

BY: _____
Edward J. Grunewald

15